UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY LYNN NORDLINGER,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 15-3852 JC<br><br>MEMORANDUM OPINION |

**I.   SUMMARY**

On May 21, 2015, Kimberly Lynn Nordlinger ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; June 1, 2015 Case Management Order ¶ 5.

///
///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On April 11, 2011, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 175). Plaintiff asserted that she became disabled on January 25, 2011, due to back surgery, depression, cervical cancer surgery, ruptured disc (L5, S1), and cervical spine fusion. (AR 211).

On June 14, 2013, the ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), plaintiff's mother, and a vocational expert. (AR 35-55).

On July 25, 2013, the ALJ determined that plaintiff was not disabled through December 31, 2012 (*i.e.*, the "date last insured"). (AR 16-26). Specifically, the ALJ found that, through the date last insured: (1) plaintiff suffered from the severe physical impairment of "Disorders of the Back," and nonsevere mental impairments of depression, anxiety, and panic attacks secondary to pain from a medical condition (AR 18, 19); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 20); (3) plaintiff retained the residual functional capacity to perform the full range of sedentary work (20 C.F.R. § 404.1567(a)) with additional limitations[1] (AR 21); (4) plaintiff was unable to perform any past relevant work

---

[1] The ALJ determined that plaintiff: (i) could stand, walk, and sit for two hours at one time, and could stand or walk for two hours total and sit for six hours total in an eight-hour workday; (ii) had no manipulative limitations and could reach overhead or in all directions; (iii) could operate foot controls; (iv) could lift or carry 10 pounds frequently; (v) could frequently climb stairs and ramps, but was restricted from climbing a ladder, rope, or scaffold; (vi) could frequently balance and occasionally crawl; (vii) could be exposed to unprotected heights and moving mechanical parts; and (viii) had no non-exertional limitations. (AR 21).

(AR 24); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically appointment clerk, receptionist, and data clerk (AR 24-25); and (6) plaintiff's allegations regarding the intensity, persistence, and limiting effects of her subjective symptoms were not entirely credible (AR 22).

The Appeals Council denied plaintiff's application for review. (AR 1).

### III.   APPLICABLE LEGAL STANDARDS

#### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R.

///

|   |   |   |
|---|---|---|
|   |   | Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four. |
|   | (4) | Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five. |
|   | (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Courts review only the reasons provided in the ALJ's decision, and the decision may not be affirmed on a ground upon which the ALJ did not rely.  See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).

///

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)). To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). A denial of benefits must be upheld if the evidence could reasonably support either affirming or reversing the ALJ's decision. Robbins, 466 F.3d at 882 (a court may not substitute its judgment for that of the ALJ) (citing Flaten, 44 F.3d at 1457); see also Molina, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.") (citation omitted).

Even when an ALJ's decision contains error, it must still be affirmed if the error was harmless. Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014). An ALJ's error is harmless if (1) it was inconsequential to the ultimate nondisability determination; or (2) the ALJ's path may reasonably be discerned, even if the ALJ explains the ALJ's decision with less than ideal clarity. Id. (citation, quotation marks, and internal quotations marks omitted).

### IV. DISCUSSION

#### A. The ALJ Properly Evaluated the Severity of Plaintiff's Mental Impairments

##### 1. Pertinent Law

At step two, a claimant must present evidence of "signs, symptoms, and laboratory findings" which establish a medically determinable physical or mental

impairment that is severe and, at least, has lasted or can be expected to last for a continuous period of twelve months or more. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1508, 404.1509, 404.1520(a)(4)(ii).

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is "not severe" only if the evidence establishes a "slight abnormality" that has "no more than a minimal effect" on a claimant's "physical or mental ability to do basic work activities."[2] 20 C.F.R. § 404.1521(a); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citations and internal quotation marks omitted).

When reviewing an ALJ's findings at step two, the district court generally "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Webb, 433 F.3d at 687 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

**2. Analysis**

Plaintiff contends that reversal or remand is warranted because the ALJ failed to find that plaintiff had a severe mental impairment. (Plaintiff's Motion at 4-7). Specifically, plaintiff argues that the ALJ's findings at step two are erroneous essentially because the ALJ (i) improperly evaluated the opinions of Dr.

---

[2] "Basic work activities" are "the abilities and aptitudes necessary to do most jobs" including "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [¶] (2) Capacities for seeing, hearing, and speaking; [¶] (3) Understanding, carrying out, and remembering simple instructions; [¶] (4) Use of judgment; [¶] (5) Responding appropriately to supervision, co-workers and usual work situations; and [¶] (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b).

6

Joseph Smurda, plaintiff's treating psychiatrist who stated, in part, that "he did not believe [plaintiff] could work" due to plaintiff's mental limitations; (ii) misinterpreted plaintiff's other mental health records; and (iii) failed to obtain "testimony from a medical advisor at the hearing." (Plaintiff's Motion at 10-15). The Court finds that the ALJ's step two findings are free from material error and are supported by substantial evidence.

      First, as discussed more fully below, the ALJ properly gave no weight to Dr. Smurda's opinion that plaintiff was unable to work.

      Second, substantial evidence supports the ALJ's determination at step two that plaintiff did not have a severe mental impairment. When determining whether a plaintiff's mental impairment is severe at step two, an ALJ must evaluate the four broad functional areas known as "paragraph B" criteria, namely (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). If the degree of limitation in the first three functional areas is "none" or "mild," and there are no episodes of decompensation, a plaintiff's mental impairment is generally found "not severe" unless there is evidence indicating a more than minimal limitation in the plaintiff's ability to perform basic work activities. See 20 C.F.R. § 404.1520a(d)(1). Here, the ALJ found only mild limitations in the first three functional areas for plaintiff, and no episodes of decompensation. (AR 19-20). Therefore, the ALJ properly concluded that plaintiff did not have a severe mental impairment. See 20 C.F.R. § 404.1520a(d)(1). Substantial medical evidence supports the ALJ's conclusion. In evaluating plaintiff's paragraph B criteria, the ALJ primarily relied on the findings of the state agency examining psychologist, Dr. Lou Ellen Sherrill, who opined, in pertinent part, that plaintiff would (i) be able to "perform simple and repetitive tasks with minimal supervision and . . . with appropriate persistence and pace over normal work cycle"; (ii) have no difficulty understanding, remembering, and carrying out at least simple verbal instructions;

(iii) have no difficulty observing basic work and safety standards in the workplace; and (iv) have only mild difficulty "tolerating ordinary work pressures and . . . interacting satisfactorily with others in the workplace, including the general public." (AR 744). As discussed below, the medical opinions of the examining psychologist constitute substantial evidence which supports the ALJ's decision. While plaintiff argues that the record as a whole actually demonstrates that her mental impairments have more than a minimal effect on her ability to do basic work activities (Plaintiff's Motion at 5-7), this Court will not second-guess the ALJ's reasonable determination to the contrary, even if such evidence could give rise to inferences more favorable to plaintiff. See Robbins, 466 F.3d at 882 (citation omitted).

Finally, to the extent plaintiff argues that the ALJ was obligated to obtain testimony from a medical expert at step two, such an argument lacks merit. An ALJ has an affirmative duty to assist the claimant in developing the record at every step of the sequential evaluation process. Bustamante, 262 F.3d at 954; see also Webb, 433 F.3d at 687 (ALJ has special duty fully and fairly to develop record and to assure that claimant's interests are considered). An ALJ's duty to develop the record may, in certain circumstances, require consulting a medical expert. See 20 C.F.R. § 404.1519a. The ALJ's duty generally to develop the record is triggered, however, only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted). Here, the ALJ's duty to develop the record further was not triggered. Plaintiff does not argue – nor does the record reasonably reflect – that the evidence of plaintiff's impairments is ambiguous, or that the record as a whole was inadequate to allow for proper evaluation of the medical evidence.

Accordingly, a remand or reversal is not warranted on this basis.

///

**B.   The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Psychiatrist**

### 1. Pertinent Law

In Social Security cases, courts give varying degrees of deference to medical opinions depending on the type of physician who provided them, namely "treating physicians," "examining physicians," and "nonexamining physicians." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted). A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1527(c)(2); Orn, 495 F.3d at 631 (citations and quotation marks omitted). As a general rule, opinions from treating physicians are given the greatest weight "[b]ecause treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual. . . ." Smolen, 80 F.3d at 1285 (citations omitted). An examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. Garrison, 759 F.3d at 1012 (citation omitted).

An ALJ may reject the uncontroverted opinion of a treating physician by providing "clear and convincing reasons that are supported by substantial evidence" for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). Where a treating physician's opinion is contradicted by another doctor's opinion, an ALJ may reject the treating opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted).

///
///

### 2. Analysis

Here, in a February 15, 2013 letter to plaintiff, Dr. Smurda (1) diagnosed plaintiff with "Major Depressive Disorder, Recurrent, Generalized Anxiety Disorder, and Panic Disorder with Agoraphobia" due to plaintiff's multiple mental symptoms; and (2) opined, in pertinent part, that plaintiff "remain[ed] symptomatic to the point that [she was] not able to work" and that plaintiff was "unable to work, even part time, due to [her] condition and active symptoms" ("Dr. Smurda's Opinions"). (AR 730, 756). Plaintiff contends that the ALJ failed properly to consider Dr. Smurda's Opinions. (Plaintiff's Motion at 8-11). A remand or reversal on this basis is not warranted.

First, the ALJ properly rejected Dr. Smurda's Opinions because they were not supported by the doctor's own treatment notes for plaintiff. See Connett, 340 F.3d at 875 (ALJ properly rejected treating physician's opinion where "treatment notes provide[d] no basis for the functional restrictions [physician] opined should be imposed on [claimant]"); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). As the ALJ noted, Dr. Smurda's treatment records do not plausibly document anxiety or panic attacks within the relevant period at the level of severity alleged by plaintiff. (AR 19) (citing Exs. 8F [AR 449-82], 16F [AR 730], 20F [AR 756-69]). As the ALJ also noted, Dr. Smurda's progress notes reflect that despite plaintiff's allegations of increased subjective symptoms, Dr. Smurda's mental status examinations of plaintiff "appeared to remain fairly normal." (AR 19, 24) (citing Ex. 8F at 18 [AR 466], 21-24 [AR 469-72], 27-28 [AR 475-76], 30 [AR 478], 32 [AR 480], 33-34 [AR 481-82]). Such objective findings are inconsistent with Dr. Smurda's Opinions that plaintiff had disabling mental impairments. See Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a treating provider's opinions may

constitute an adequate reason to discredit the opinions of a treating physician or another treating provider.") (citations omitted).  Moreover, a February 6, 2012, progress note indicates that plaintiff said she had spoken with her mother about doing work as a tutor.  (AR 466); cf. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 601-02 (9th Cir. 1999) (ALJ may discount medical opinion regarding claimant's significant mental limitations that, in part, was inconsistent with claimant's ability to "cope[] with the social aspects of daily living" and claimant's other demonstrated cognitive abilities).  While plaintiff suggests that the "overall diagnostic picture" actually supports Dr. Smurda's Opinions (Plaintiff's Motion at 10), the Court will not second guess the ALJ's reasonable determination to the contrary, even if the evidence could give rise to inferences more favorable to plaintiff.  See Robbins, 466 F.3d at 882 (citation omitted).

      Second, the Court notes that the ALJ was also entitled to give no weight to Dr. Smurda's statements that plaintiff was "not able to work" or "unable to work, even part time."  (AR 756).  Such conclusory statements are not treated as "medical opinions" in Social Security disability cases, "but are, instead, opinions on issues reserved to the Commissioner" which are given no "special significance," and are not binding on the Commissioner.  See 20 C.F.R. § 404.1527(d)(1); Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008) ("[The] determination of a claimant's ultimate disability is reserved to the Commissioner . . . a physician's opinion on the matter is not entitled to special significance."); Ukolov, 420 F.3d at 1004 ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citation omitted); see, e.g., Schuff v. Astrue, 327 Fed. Appx. 756, 758 (9th Cir. 2009) (ALJ not required to accept treating

///

1   physician's opinion that claimant was "unable to work," since ultimate issue of
2   disability is reserved to the Commissioner).
3         Third, the ALJ properly rejected Dr. Smurda's Opinions, in part, in favor of
4   the conflicting opinions of the state agency examining psychiatrist, Dr. Sherrill,
5   who did not find that plaintiff had any disabling mental impairment. (AR 19, 24,
6   739-44). The opinions of Dr. Sherrill were supported by her independent
7   examination and objective testing of plaintiff (AR 742-43), and thus, even without
8   more, constituted substantial evidence upon which the ALJ could properly rely to
9   reject the treating psychiatrist's opinions. See, e.g., Tonapetyan v. Halter, 242
10  F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own
11  constituted substantial evidence, because it rested on independent examination of
12  claimant).
13        Finally, to the extent plaintiff contends that the ALJ had a duty to develop
14  the evidence supporting Dr. Smurda's Opinions (Plaintiff's Motion at 11),
15  plaintiff's argument lacks merit. On February 15, 2013, plaintiff appeared before
16  the ALJ with counsel and requested that the evidentiary hearing be delayed for 30
17  days so plaintiff could "supplement the record with evidence from Dr. Smurda
18  . . . ." (AR 59). The ALJ, in turn, ordered that the hearing be continued pending
19  the results of consultative examinations of plaintiff (which plaintiff had previously
20  "refused to attend"), and granted plaintiff the opportunity to "supplement the
21  record" in the interim. (AR 60-63). This was sufficient to satisfy any duty the
22  ALJ had to develop the record of this evidence. Cf. Tidwell v. Apfel, 161 F.3d
23  599, 602 (9th Cir 1998) (ALJ satisfied duty fully and fairly to develop record by
24  keeping record open after hearing to allow supplementation of record); see also
25  Smolen, 80 F.3d at 1288 (ALJ may discharge duty fully and fairly to develop
26  record by, among other things, subpoenaing or submitting questions to claimant's
27  physicians, and continuing hearing to augment record).
28        Accordingly, a remand or reversal on this basis is not warranted.

### C. The ALJ Properly Evaluated Plaintiff's Credibility

#### 1. Pertinent Law

When a claimant provides "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged," and there is no affirmative finding of malingering, the ALJ may discount the credibility of the claimant's subjective complaints only by "offering specific, clear and convincing reasons for doing so." Brown-Hunter v. Colvin, __ F.3d __, 2015 WL 6684997, *5 (9th Cir. Nov. 3, 2015) (citation and internal quotation marks omitted). An ALJ's credibility determination must be specific enough to permit a reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's subjective complaints. Id. at *5 (citation and quotation marks omitted). Consequently, an ALJ must specify the testimony he or she finds not credible, provide "clear and convincing reasons" why the particular testimony lacks credibility, and identify the specific evidence which undermines the claimant's subjective complaints. See, e.g., id. at *1, *5-*6 (citing Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014)). "General findings are insufficient[.]" Id. at *5 (citations and quotation marks omitted). Nonetheless, if the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted); see also Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (Evaluation of a claimant's credibility and resolution of conflicts in the testimony are solely functions of the Commissioner.) (citation omitted).

#### 2. Analysis

Plaintiff contends that a remand or reversal is warranted because the ALJ "failed to articulate legally sufficient reasons for rejecting [plaintiff's] testimony . . . ." (Plaintiff's Motion at 11-13). The Court disagrees.

///

First, the ALJ properly discounted the credibility of plaintiff's complaints of disabling symptoms based on conflicts between plaintiff's own statements and her conduct. See Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct"). As the ALJ noted, during the psychiatric examination plaintiff indicated that plaintiff's mother manages her money (AR 741), while plaintiff's mother reported that plaintiff was able to pay bills, handled a savings account, count change, and use a checkbook/money orders. (AR 225). As the ALJ also noted (AR 22-23), despite plaintiff's allegations of a worsening mental condition and reclusiveness, Dr. Smurda noted on October 17, 2011 that plaintiff had "restarted" socializing (AR 476), and also noted on February 6, 2012, that plaintiff had plans to meet friends outside of her home (AR 466). Similarly, although plaintiff testified at the hearing that due to her depression and "anxiety disorder" plaintiff was "not [] able to go out of the house," and that she essentially did not leave her house except to go to doctors' appointments (AR 39, 42), plaintiff's mother reported that plaintiff would spend time with others "on a daily basis," and go places outside the home "every other day at most" (AR 226). The ALJ was entitled to find that such inconsistencies, and plaintiff's possible dishonest statements, eroded the credibility of plaintiff's subjective complaints. Cf. Tonapetyan, 242 F.3d at 1148 ("In assessing the claimant's credibility, the ALJ may use 'ordinary techniques of credibility evaluation,' such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony.").

Second, when evaluating the credibility of plaintiff's subjective complaints, the ALJ also properly considered evidence that plaintiff had refused to attend consultative examinations. (AR 23; see AR 447-48 [state agency reviewing doctor report noting "[c]laimant is refusing to attend a CE"]; AR 60-61 [ALJ noting

same]); cf. 20 C.F.R. § 404.1518 (application for benefits may be denied if claimant fails or refuses to take part in consultative examination without a good reason ).

Third, the ALJ properly discounted plaintiff's credibility based on plaintiff's failure to seek or obtain treatment that was consistent with the alleged severity of plaintiff's allegations of disabling pain. See Molina, 674 F.3d at 1113 (when assessing credibility ALJ may properly rely on claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.") (citations and internal quotation marks omitted); see also Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted), cert. denied, 552 U.S. 1141 (2008). As the ALJ noted, plaintiff's treating orthopedic surgeon noted, among other things, that plaintiff had "missed four of her past [follow-up] appointments," and that the doctor had warned plaintiff that if she failed to return for follow-up appointments, the doctor would "need to discharge [plaintiff] as a patient. . . ." (AR 23, 665-66). In addition, despite plaintiff's complaints of trouble with postural activities, the record reflects that plaintiff's functioning improved with physical therapy and conservative treatment, and that plaintiff became able to walk up to three or four miles and engage in other exercise. (AR 23) (citing Exs. 11F at 6-7 [AR 540-41 (July 26, 2012 progress note reflecting plaintiff was treated with massage, exercise, and home therapy and that plaintiff could do "almost up to 4 miles walking")], 11F at 12 [AR 546 (noting plaintiff's treatment included stretching, postural adjustment, and possible transition to massage)], 12F at 7 [AR 646, 647 (plaintiff "doing well" after pain medication tapered)], 14F at 8 [AR 678 (February 27, 2012 treatment note referring plaintiff to physical therapy and noting plaintiff "doing Pilates twice weekly")]).

///

Finally, the ALJ properly discounted the credibility of plaintiff's subjective complaints, in part, based on the absence of supporting objective medical evidence. Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). For example, as the ALJ noted, in an April 6, 2011 Follow-Up Report, plaintiff's treating orthopedic surgeon stated that three weeks after plaintiff's surgery plaintiff had "done extremely well" and that plaintiff's pain was "completely resolved." (AR 23, 668). In a May 11, 2011 Follow-up Report, the same doctor observed that plaintiff was doing "extremely well" two months after surgery, that the doctor was "pleased with [plaintiff's] progress," and that plaintiff was no longer "taking medications on [a] regular basis." (AR 667). Additional records also show progressive improvement in plaintiff's condition. (AR 23) (citing Exs. 10F at 4 [AR 498 (April 9, 2012 progress note indicating that plaintiff's cervical spine pain had "improved . . . [a] tremendous amount" with physical therapy, and plaintiff's lumbar spine pain remained "severe," but had also "slightly improved with physical therapy")], 11F at 6 [AR 540 (July 26, 2012 progress note stating that plaintiff's "neck [had] really been good")], 12F [AR 640-57 (March to June 2012 records from pain management center noting, among other things, that by June 27, 2012 plaintiff was "doing very well" overall, plaintiff's medication had "been extremely helpful for [plaintiff's] . . . pain," plaintiff's neck pain had been "resolved for the most part," and her back pain was "better," and that plaintiff had been involved in a walking program and hoped to "be able to participate in a 5K walk on July 4 in the Pacific Palisades")], 13F at 8 [AR 666 (February 28, 2012 Follow-Up Report suggesting that treating surgeon had difficulty identifying a medical basis for plaintiff's alleged "continue[d] . . . significant pain")], 15F at 4 [AR 728 (October 27, 2011 Physical Therapy

Discharge Summary noting "Patient has made excellent gains in physical therapy for both lumbar and [right] shoulder returning her to her prior level of function pain-free.")]); cf., e.g., Warre v. Commissioner of Social Security Administration, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits.") (citations omitted).

The foregoing evidence belies plaintiff's contention that the ALJ had selectively relied only on evidence from 2011 to support the ALJ's finding that plaintiff's condition had progressively improved. (See Plaintiff's Motion at 12-13). In addition, to the extent plaintiff argues that the medical evidence is actually consistent with her subjective complaints (Plaintiff's Motion at 12-13), the Court declines to second guess the ALJ's reasonable interpretation to the contrary. See Rollins, 261 F.3d at 857 (citation omitted).

Accordingly, a remand or reversal on this basis is not warranted.

## V.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 30, 2015

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE